IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KINYATA GLASS,**

**Plaintiff,**

**v.**

**ILLINOIS DEPARTMENT OF TRANSPORTATION,**

**Defendant.**                                                                 No. 05-CV–310-DRH

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

### I. Introduction and Background

Now before the Court is Defendant's motion for summary judgment (Doc. 27). Specifically, Defendant argues that it is entitled to summary judgment because Plaintiff cannot make out her prima facie case of discrimination and she has not shown that Defendant's proffered reason for her employment decisions were pretextual. Plaintiff opposes the motion (Doc. 37). Based on the pleadings, the applicable and the following, the Court grants Defendant's motion for summary judgment.

On April 27, 2005, Kinyata Glass filed suit against her former employer, the Illinois Department of Transportation ("IDOT"), pursuant to Title VII of the Civil

Rights Act fo 1964, as amended, **42 U.S.C. § 2000e, *et seq***. (Doc. 1). Specifically, Glass alleges that IDOT discriminated against her on the basis of sex, race, and religion by not promoting her and created a hostile work environment for her. On September 6, 2005, the Court granted IDOT's motion to dismiss and dismissed with prejudice Glass' allegations regarding the hostile work environment, race and sex discrimination as those claims are not reasonably related to the claim contained in her EEOC charge[1] (Doc. 16).[2]

Thereafter, IDOT moved for summary judgment (Doc. 27). Plaintiff filed a response in opposition (Doc. 37). In response, IDOT filed a reply (Doc. 38) and a motion to strike portions of Plaintiff's brief (Doc. 39). On January 19, 2007, the Court granted IDOT's motion to strike and stuck her claims that IDOT failed to reasonably accommodate her religious beliefs and that IDOT's safety policy had a disparate impact on Pentecostal women contained in her response in opposition to IDOT's motion for summary judgment (Doc. 40).[3] The Court now turns to address the motion for summary judgment.

## II. Facts

In January, 2002, IDOT hired Glass to a full-time position with the

---

[1] Glass' charge of discrimination only alleges that she was denied a promotion and that her immediate supervisor changed her yearly evaluation because of her religion.

[2] Glass did not respond to the motion to dismiss.

[3] Glass did not respond to the motion to strike.

Construction Bureau.[4]  Prior to taking a position with the Construction Bureau, Plaintiff was given a training booklet.  In March, 2002, Glass informed IDOT that due to a change in her religious beliefs, she could no longer wear pants.  Plaintiff followed up in writing on May 14, 2002 and attached a letter from her pastor indicating why she could no longer wear pants.  Wearing a skirt or a dress to a construction site is a violation of IDOT's dress code and safety code.[5]  Due to Plaintiff's inability to dress in conformance with IDOT's policies, Plaintiff was assigned to a position away from construction sites, effective June 24, 2002.[6]  She first served in a temporary capacity in Fairview Heights, working with emergency patrol vehicles, fulfilling duties until another fill-time staff member was hired to take over the duties.

In November, 2002, Glass began working as an Engineering Technician I ("ETI") in the District 8 Headquaters in Collinsville, Illinois in the Operations

---

[4]Prior to this time, Glass had worked with IDOT on a part-time basis.  She began working at IDOT on May 16, 1997 as a summer technician and received an "Exceeds Expectations" Temporary Employee Evaluation. (Doc. 37-2).

[5]On September 9, 1999, an IDOT memorandum regarding field clothing was issued.  That memorandum states in part: "In order to insure interpretation of this policy and to minimize employee injuries such as sunburn, poison ivy, skin damage from hot or dangerous liquids, etc., all employees who work in highway field operations are required to wear shirts with sleeves (no tank tops or cut off sleeves) as well as trousers for all work assignments.  All work clothing must be fabricated of materials which are flame resistant and protect the skin from sun exposure and injury."  (Doc. 27-5).

[6]On June 20, 2002, IDOT sent Glass a memorandum regarding her reassignment.  That memorandum states: "Based upon your need for reassignment from field activities in Construction that present a potential safety hazard, we offered you an assignment in Operations or in Program Development.  You have indicated to us after talking to both location bureau chiefs and personnel, that you are interested in working in Operations for Jennifer Obertino.  Consequently, effective **Monday, June 24, 2002** you are to report to Jennifer Obertino for assignment at your normal starting time.  We wish you the best of luck and keep us advised as to how this position works out for you."  (Doc. 27-5).

Bureau under the supervision of Brian Sneed. Sneed assigned duties to Glass and evaluated her work performance from November 2002 to through December 2004. In August, 2003, Sneed evaluated Glass for the first time. This evaluation covered Glass' work performance from July 1, 2002 to June 30, 2003.

The July 1, 2002 to June 30, 2003 evaluation states as to overall performance level of employee: "Performance is unsatisfactory. Results do not achieve job requirements and expectations. Improvement is essential to justify retention in the position." (Doc. 27-4). This evaluation also indicates that Glass refused to sign her evaluation. (Doc. 27-4). In response to the evaluation, Glass filed a memorandum indicating that she disagrees with her supervisor's comments because she did her assigned duties satisfactorily and in a timely manner given the supervision she was given. After this evaluation, which Sneed found Glass' work unacceptable, Glass was given quarterly evaluations.

During her first quarter evaluation, Glass received a written reprimand for leaving her workstation and reading a magazine instead of monitoring the I-64 congestion and properly displaying messages to motorists as well as failing to notify supervisors of her need to leave the area during an emergency situation and deleting six emails from supervisors without reading them.

In January 2004, at the end of the second quarterly evaluation, Glass had been working as an ETI for the maximum 24 month period allowed by the union contract. Following the satisfactorily quarter evaluation, Glass was promoted to the

position of ETII, effective January 16, 2004.[7] Due to her promotion, Glass acquired more duties during the third and fourth quarters of the evaluation period.

In August 2004, Glass saw a version of her evaluation that indicated that she was meeting her employers expectations for the period from July 1, 2003 to June 30, 2004. According to Sneed, the initial "meets expectations" rating was a mistake in that he did not take into consideration her promotion to ETII position in January 2004. Once he realized the mistake and reevaluated based on the ETII position, he gave Glass an unsatisfactory evaluation. Her job performance was unsatisfactory for the following reasons: (1) she demonstrated difficulty completing tasks successfully in their entirety when given to her orally; (2) many assignments still required corrections; and (3) when her tasks required engineering judgment, she had difficulty trusting her own engineering judgment and routinely asked for help. Glass was instructed to revise assignments, however, she takes issue with the claim that assignments required "multiple" revisions.

IDOT was under a hiring freeze from the time Glass graduated from college with a Bachelor's degree in May, 2003 to 2004. Two positions were filled on August 16, 2004 when two employees, Brad Williams and Sharon Byrd, were converted from Engineering Technician positions to Civil Engineer positions. At the time of these promotions, Glass did not have positive evaluations and had received two unsatisfactory annual evaluations in a row. Glass resigned her employment with

---

[7]Pursuant to the collective bargaining agreement, promotions from and ETI position to an Engineering Technician II ("ETII ") position shall occur between 18 months and 24 months of service in the ETI position, upon a showing of satisfactory performance.

IDOT on October 7, 2005.

### III. Summary Judgment

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c)**; *Wyatt v. UNUM Life Insurance Company of America*, 223 F.3d 543, 545 (7th Cir. 2000); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).

In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *EEOC v. Sears, Robuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Accord *Starzenski v. City*

*of Elkhart*, **87 F.3d 872, 880 (7th Cir. 1996), cert. denied, 117 S. Ct. 683 (1997);** *Tolle v. Carroll Touch, Inc.*, **23 F.3d 174, 178 (7th Cir. 1994)**.

This standard should be applied "with added rigor" in employment discrimination cases, in which intent and credibility are crucial issues. *Webb v. Clyde Choate Mental Health and Development Center*, **230 F.3d 991, 997 (7th Cir. 2000);** *Miller v. Borden, Inc.*, **168 F.3d 308, 312 (7th Cir. 1999);** *King v. Preferred Technical Group, Inc.*, **166 F.3d 887, 890 (7th Cir. 1999)**. This standard reflects pronouncements that in employment discrimination cases, which often involve issues of motive and intent, summary judgment must be approached with caution. *Huhn v. Koering Co.*, **718 F.2d 239, 242 (7th Cir. 1983)**. *Huhn* relied on an earlier case which recognized that, although summary judgment is improper in employment discrimination cases which involve "weighing of conflicting indications of motive and intent," where a plaintiff has no evidence of discriminatory motive to "put on the scales for weighing," summary judgment *is* appropriate. *Id.*

### IV. <u>Analysis</u>

IDOT argues that it is entitled to summary judgment because Glass cannot make our her prima facie case of religious discrimination. Plaintiff cannot prove that she was qualified for the Civil Engineer position and there is no evidence to support her contention that the employees were not better qualified. Alternatively, IDOT proffers legitimate, non-discriminatory reasons for the employment actions that it took and that there is no evidence that these reasons were pretextual. Plaintiff

responds that she was not converted to a CE position on the basis of discriminatory evaluations. Plaintiff does not deny that there are negative evaluations in her file, however, Plaintiff urges the Court to recognize that the negative evaluations were the result of religious discrimination and then were relied upon to make the hiring decision.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." **42 U.S.C. § 2000e-2**. An employee alleging religious discrimination may proceed by presenting direct evidence of discriminatory intent or by using the ***McDonnell Douglas*** burden-shifting method. ***See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)**. Glass has not provided any direct evidence of discriminatory intent, and therefore she must establish a *prima facie* case of discrimination. To do so, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) at least one similarly situated employee, not in her protected class, was treated more favorably. ***Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 978 (7th Cir. 2004)**. The Court concludes that Glass fails to establish both the second and fourth elements of a prima facie case of religious discrimination.[8]

First, Glass has failed to prove that she was meeting her employer's

---

[8] The parties do not dispute that Glass is a member of a protected group in that she is a practicing Pentacostal.

legitimate business expectations, which the second element of **McDonnell Douglas** requires to prove a *prima facie* claim. Although plaintiff complains that IDOT's failure to convert her to a Civil Engineer was a result of religious discrimination, IDOT did not convert her to CE because she had two unsatisfactory annual evaluations in a row. The evaluations identify several areas where Glass was not meeting IDOT's expectations: (1) difficulty in completing tasks successfully in their entirety when given to her orally; (2) completed assignments requiring corrections; (3) difficulty trusting her own engineering judgment and (4) routinely asking for help rather than researching an issue on her own.

Although plaintiff alleges that Bradley Williams and Sharon Byrd (employees with similar educational backgrounds) were were treated more favorably than she, plaintiff provides no evidence at all of any employee who is directly comparable to her in all material respects, or one who was similarly situated, but received better treatment, as required to satisfy the fourth prong. **See Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)**. Because Plaintiff fails to establish the second and fourth prongs of the prima facie case of religious discrimination, the Court need not reach the pretext analysis, although the Court notes that it would fail for the reasons set forth above. Furthermore, there is no evidence that IDOT's reasons for evaluating Glass as unsatisfactory or for failing to promote Glass were in anyway pretextual. While Glass may have perceived that the failure to be converted to a CE was directly due to her religion, she offers no facts in

support of that perception. Thus, the Court finds that no genuine issue of material fact exist regarding Glass' claim.

### V. Conclusion

Accordingly, the Court **GRANTS** IDOT's motion for summary judgment (Doc. 27). Further, the Court **ORDERS** the Clerk of the Court to enter judgment in favor of the Illinois Department of Transportation and against Kinyata Glass.

**IT IS SO ORDERED.**

Signed this 15th day of February, 2007.

/s/        David  RHerndon
**United States District Judge**